IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY BRADFORD CLARKE,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF MADERA *et al.,*<br>　　　　　　　Defendants.<br>_____/ | CASE NO. CV-F-07-1806- LJO-DLB<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE AND REQUEST FOR JUDICIAL NOTICE** |

**I. INTRODUCTION**

Defendant City of Madera ("Madera") moves to dismiss Plaintiff Stanley Bradford Clarke's ("Mr. Clarke's") fourth amended complaint. Madera argues that Mr. Clarke's state law claims are barred, because Mr. Clarke did not comply with California's Tort Claim Act. Madera argues further that Mr. Clarke's Fourteenth Amendment and 42 U.S.C. §1983 ("Section 1983") claims should be dismissed on grounds that the complaint does not contain allegations of a policy or custom and that individual officers have qualified immunity for their alleged actions. Mr. Clarke opposed the motion. For the reasons presented below, this Court grants Madera's motion to dismiss.

**II. BACKGROUND**

Mr. Clarke alleges that in September 2005, he noticed indicia of sexual and/or physical abuse of his son. Mr. Clarke suspected that his ex-wife was the cause of the abuse, so he contacted various Madera agencies, including the police department, to report his suspicions. Mr. Clarke alleges that after

an investigation, employees of Madera[1] instructed him to sequester his child, notwithstanding the pre-existing custody order requiring Mr. Clarke to return his son to his ex-wife at a certain date. Mr. Clarke alleges that he followed defendants' instructions and sequestered his child. Thereafter, defendants caused Mr. Clarke to be charged with kidnaping, child abduction, and violation of the juvenile court order concerning custody. As a result, Mr. Clarke lost custody and visitation rights of his son.

Mr. Clarke alleges that Madera, acting through various employees, deprived him of his fundamental liberty interest in his parent-child relationship, in violation of his due process rights pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983. Mr. Clarke further asserts causes of action for negligence and intentional infliction of emotional distress.

Mr. Clarke filed a Torts Act claim with Madera on March 13, 2006. That claim was reviewed, and Madera sent a Notice of Insufficiency of Claim on March 17, 2006. Mr. Clarke then filed an action in Madera County Superior Court (Case No. MCV034341). The Superior Court sustained three demurrers and allowed Mr. Clarke leave to amend his complaint. On November 4, 2007, Mr. Clarke filed his fourth amended complaint.

On December 11, 2007, Madera removed this action to this Court pursuant to 28 U.S.C. §1441(b). On December 17, 2007, Madera filed the instant motion to dismiss. Mr. Clarke opposed the motion on January 10, 2008. Madera replied on January 16, 2008. The Court found this motion suitable for submission on the pleadings, vacated the January 24, 2008 hearing, and issues the following order.

### III. Analysis

**A.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969); *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976).

---

[1] Actions attributable to employees are alleged against unnamed Doe Defendants, herein referred to as "defendants."

Although courts assume the facts alleged as true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the complaint lacks sufficient facts to support a cognizable legal theory against a defendant. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity is not contested, and documents subject to judicial notice. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997).

**B.     Tort Claims Act as Condition Precedent to State Law Claims**

Mr. Clarke alleges two state law causes of action–negligence and intentional infliction of emotional distress. Madera argues that Mr. Clarke did not comply with the Tort Claims Act and is therefore precluded from proceeding on these claims. Alternatively, Madera argues that Mr. Clarke is limited to the facts contained in his claim, which would require dismissal of the state law claims. Mr. Clarke counters that this Court cannot consider extrinsic evidence and is bound by Mr. Clarke's statement of compliance with the Tort Claims Act in his fourth amended complaint.

Unless provided by statute, a public entity is not liable for an injury, whether the injury arises out of an act or omission of the public entity, employee, or any other person. Cal. Gov. Code section 815(a). Cal. Gov. Code section 945.4 requires, as a prerequisite to maintenance of an action against a public entity for damages arising out of an alleged tort, the timely filing of a claim and its rejection. *Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431 (1988). Furthermore,

> [i]f a plaintiff relies on more than one theory of recovery against the government agency, each cause of action must be reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond to the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim. *Fall River, supra*, *quoting Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (1982).

Mr. Clarke contends that he complied with this requirement. *See*, FAC ¶¶ 38, 45. Mr. Clarke argues this that Court cannot consider the written claim and letter submitted by Madera in support of this motion, because the Court is limited to the allegations contained in the complaint in a motion to dismiss. Mr. Clarke ignores Madera's request for judicial notice.

This Court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, Federal Rule of Evidence 201 allows for judicial notice to be taken of facts that are "not subject to reasonable dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Madera requested judicial notice of the Certified Tort Claim filed by Mr. Clarke and the Notice of Insufficiency. This Court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201. *MGIC Idem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). The documents presented by Madera are matters of public record. Further, they are certified by the city clerk, so that their accuracy cannot be reasonably questioned. Therefore, this Court takes judicial notice of Mr. Clarke's Tort Claim and Notice of Insufficiency.

Though Mr. Clarke submitted his Tort Claim on March 10, 2006, he did not set forth locations, facts or circumstances surrounding his claim. Instead, Mr. Clarke provided a list of causes of action and damages. On March 17, 2006, a "Notice of Insufficiency of Claim and Return Without Action" was mailed to Mr. Clarke, with proof of service. In that letter, Mr. Clarke was advised that his claim had been reviewed and was determined to be deficient because: (1) the claim did "not provide enough information to determine when, **where**, and/or **how** the incident/accident occurred"; and (2) the claim did "not provide enough specific information to determine **what** if anything the public entity did or failed to do to create liability exposure." (emphasis in original).[2]

When there is an attempt to comply with the filing requirements of the claims statute, but the compliance is defective, the test of substantial compliance controls. *Pac. Tel. & Tel. Co. v. County of Riverside*, 106 Cal. App. 3d 183 (Cal. App. 4th Dist. 1980). "Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claim to reasonably enable the public entity to make an investigation of the merits of the claim and to settle it without the expense of a lawsuit." *Id.*

---

[2] The letter also contained a disclosure, which reads: "**WARNING: A claim that is deficient or does not contain sufficient information, as required by law, may not be considered to have been filed in a timely manner and may prevent the prosecution of a lawsuit based on the incident/accident which is the subject of this Claim**." (emphasis in original).

4

Here, Mr. Clarke did not disclose any facts or circumstances surrounding his claim. Madera did not have information sufficient to make an investigation. Madera notified Mr. Clarke that his claim was insufficient, because it lacked necessary details about the alleged incident. Mr. Clarke did not respond to the notice. Therefore, Mr. Clarke did not comply substantially with the filing requirements. *See, Elias v. San Bernadino County Flood Control Dist.*, 68 Cal. App. 3d 70 (Cal. App. 4th Dist. 1977) (the primary function of the Tort Claims Act is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim where appropriate). Accordingly, Mr. Clarke's state law claims are dismissed.

**C.     Federal Cause of Action**

**1. Municipal Liability**

Madera argues that Mr. Clarke failed to plead his Section 1983 cause of action against Madera properly, because Mr. Clarke did not allege that Madera had an official policy or custom which led to the alleged injury. Relying on *Paratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986)), Mr. Clarke counters that the only elements he is required to plead for his Section 1983 claim are: (1) a violation of rights protected by the Constitution or created by federal statute; (2) cause; (3) by conduct of a "person"; (4) acting under color of state law.

Counties, cities, and local officers sued in their official capacities cannot be vicariously liable under Section 1983 for the actions of subordinate officers (*Monell v. Dept. of Soc. Servs.*, 436 U.S. 668, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)), but may be liable for constitutional violations where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopting that official policy is responsible for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. 668, 690. Section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional right." *Id.* Thus, "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell,* 436 U.S. 658, 691.

Thus, to state a Section 1983 cause of action against Madera, Mr. Clarke must plead: (1) a municipal custom or policy and (2) that this custom or policy was "the cause of and the moving force behind the deprivation of constitutional rights." *Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985). In other words, there is no *respondeat superior* liability against a municipality. Mr. Clarke may impute conduct to the municipality if the individual committing an alleged wrong is a "policy-maker" within the municipality hierarchy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-28 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 489 (1986).

Here, Mr. Clarke alleged no custom or policy which caused his alleged deprivation of his constitutional rights. Further, Mr. Clarke did not allege that the deprivation of rights was committed by a Madera policy-maker. Mr. Clarke argues that informal practices support liability of an entity defendant. "[A]lthough the touchstone of a [Section] 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments...may be sued...even though such a custom has not received formal approval through the body's official decision-making channels." *Thompson v. City of Los Angeles*, 885 F.2d 1439 (9th Cir. 1989). However, "only if a plaintiff shows that his injury resulted from a permanent and well-settled practice may liability attach for injury resulting from a local government custom." *Id*. at 1444. Mr. Clarke did not allege such a practice. Therefore, Mr. Clarke's Section 1983 cause of action against Madera is dismissed.

### 2. Qualified Immunity

Mr. Clarke alleges that individual officers who were the employees of Madera caused his alleged deprivation of rights. Specifically, Mr. Clarke argues defendants' conduct, "e.g. instructing [him] to sequester his son, and then causing [him] to incur criminal charges for complying with their instructions, clearly amounts to a violation of his due process rights. As alleged in the complaint, this conduct was the cause of Clarke's loss of his parenting rights." Madera argues that the individual officers are entitled to qualified immunity, because (1) a parent's interest in raising his child is not absolute; and (2) Mr. Clarke has been afforded due process, since he had an opportunity to challenge the charges of kidnaping, child abduction, and/or violation of juvenile court order in previous court proceedings.

///

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A ruling on qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided." *Id*. The qualified immunity analysis is a two-step process. First, the Court determines whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional violation occurred, there is no need for further inquiry. If, on the other hand, the Court finds that a constitutional violation "could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

Mr. Clarke alleges that defendants' actions deprived him of a fundamental liberty interest in maintaining his parent-child relationship with his son. Mr. Clarke alleges that in September 2005, defendants notified him that: (1) based on the results to date of the second investigation, an incident of sexual and/or physical abuse of A had occurred; (2) an arrest warrant for Mr. Clarke's former spouse would be issued; (3) juvenile court proceedings would be initiated on an emergency basis to prevent return of his son to the custody of his ex-wife; (4) pending those proceedings and/or investigations Mr. Clarke was not to deliver custody of his son to his ex-wife at the time otherwise scheduled to do so; and (5) Mr. Clarke was to sequester his son to prevent his ex-wife from obtaining custody pending her arrest. FAC ¶ 13. Mr. Clarke alleges that in response to these instructions, he informed defendants of the pre-existing custody and/or visitation order. FAC ¶14. Nevertheless, Mr. Clarke alleges that "defendants confirmed and repeated there (sic) instructions." *Id.* Mr. Clarke alleges that he followed defendants instructions and sequestered his son. FAC ¶15. Thereafter, Mr. Clarke alleges that notwithstanding that his actions were "undertaken in compliance with the instructions given to him by defendants," defendants "caused criminal charges to be filed against" Mr. Clarke for kidnaping, child abduction, and/or violation of juvenile court orders. FAC ¶16. As a result of the filing of criminal charges against Mr. Clarke, he lost custody and visitation rights of his son, lost his "right to participate in the parenting" of his son and lost "other rights in connection with his rights as" a father. FAC ¶17.

"The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). In determining whether a liberty interest in implicated in this case, this Court "must look not to the 'weight' but to the *nature* of the interest at stake." *Id.* at 571 (emphasis in original). First, the Court must determine whether due process applies. If it is determined that due process applies, "the question remains what process is due." *Morrissey v. Brewster*, 408 U.S. 471, 481 (1972).

Generally, "[a] parent has a constitutionally protected interest in the custody and care of his or her children." *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). However, "this interest is not absolute." *Caldwell,* 928 F.2d 331, 333. For example, while "non-custodial parents with court-ordered visitation rights have a liberty interest in the companionship, care, custody and management of their children," that "liberty interest...[may be] substantially reduced by the terms of [a] state court custody judgment." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) (ruling that a non-custodial parent does not have a Constitutional right to limited, state-created visitation rights).

Here, Mr. Clarke may have some right to custody of his son; however, those rights have been reduced by the terms of the state court custody judgment. As in *Brittain*, *supra*, this Court need not define the parameters of Mr. Clarke's liberty interests in his visitation and custodial rights, because, as discussed more fully below, Mr. Clarke was afforded due process before those rights allegedly were infringed upon.

Parents have due process rights to a hearing before they can be deprived of their custodial rights. For example, before parents may be permanently deprived of custody based on child abuse, proof of that abuse, by clear and convincing evidence at a hearing, is required. *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982). Indeed, "when the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." 455 U.S. at 759. "By contrast, the states regularly adjudicate custody disputes between the parents on a 'best interests of the child' standard." *Brittain*, 451 F.3d 982, 990 (citing *Reno v. Flores*, 507 U.S. 292, 303-04 (1993)). Further, a custodial parent may not be deprived of physical custody on a temporary basis without either an emergency or a pre-deprivation hearing. *See, e.g., Ram v. Rubin*, 118 F.3d 1306 (9th Cir. 1997).

8

Mr. Clarke was afforded at least one hearing before he was deprived of his custodial rights. Once defendants "caused criminal charges to be filed" against Mr. Clarke, Mr. Clarke did not automatically lose his custody and visitation rights of his son. Those rights would have been determined by either the criminal or, more likely, the juvenile court proceedings which inevitably followed the filing of those charges. Thus, even if defendants caused the criminal charges to be filed, defendants did not cause a deprivation of Mr. Clarke's rights. Mr. Clarke's liberty interest was "substantially reduced by the terms of [a] state court custody judgment." *Brittain*, 451 F.3d 982, 992. Mr. Clarke does not allege that defendants deprived him of a hearing. Mr. Clarke does not allege that defendants physically removed his son from his custody to deprive him of his rights. The actions of defendants caused Mr. Clarke to defend his rights, not to lose them. As such, the deprivation of Mr. Clarke's liberty interest in custody of his son does not rise to the level of a federal constitutional violation. Because this Court finds that there was no Constitutional violation, defendants are entitled to qualified immunity.

**D.     Leave to Amend**

Although leave to amend should be freely granted, Mr. Clarke did not request leave to amend. Further, this Court is mindful that this is Mr. Clarke's *fourth* amended complaint. Moreover, the issues raised by Mr. Clarke are proper for the court currently considering Mr. Clarke's custody rights (i.e. the ongoing juvenile proceeding). Mr. Clarke has a remedy in a forum which is in a better position to determine his custody rights. "Allowing a Section 1983 substantive due process claims to proceed under the alleged deprivation of liberty here [infringement of custody and visitation rights] could have unfortunate consequences for our federal system. It could dramatically interject federal courts and federal law into domestic relations disputes involving children which...is "an area that has long been regarded as a virtually exclusive province of the States." *Sosna v. Iowa*, 419 U.S.393, 404 (1975); *see also, Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1 (2004). "This case further implicates two separate lines of Supreme Court cases in which the Court has urged particular caution: those regulating police conduct and those concerning domestic relations." *Britain*, 451 F.3d 982, 990 (internal citations omitted). Having considering these factors, the Court declines to grant *sua sponte* Mr. Clarke leave to amend.

///

### IV. CONCLUSION

For the foregoing reasons, this Court:

1. GRANTS Madera's motion to dismiss Mr. Clarke's fourth amended complaint;
2. DISMISSES Madera's motion to strike as moot; and
3. DIRECTS the clerk of this Court to enter judgment in favor of Defendant Madera and against Plaintiff Stanley B. Clarke.

IT IS SO ORDERED.

Dated: __January 24, 2008__          _____/s/ Lawrence J. O'Neill_____
                                    UNITED STATES DISTRICT JUDGE